IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

**JOSHUA CALEB BOHMKER**, et al,

Case No. 1:15-cv-01975-CL

Plaintiffs,

v.

**ORDER**

**STATE OF OREGON**, et al,

Defendants,

v.

**ROGUE RIVERKEEPER,** et al,

Intervenor-defendants.

CLARKE, Magistrate Judge

This case comes before the Court on the parties' cross-motions for summary judgment (#18, #52). Plaintiffs are individual miners, mining groups and associations, and businesses related to the mining industry. Collectively, they bring this cause of action against the defendants, the State of Oregon, Ellen Rosenblum in her official capacity as the Attorney General of the State of Oregon, and Mary Abrams in her official capacity as the Director of the Oregon Department of State Lands, claiming that Oregon Senate Bill 838 (SB 838) is preempted by federal law. SB 838, with some exceptions, temporarily prohibits instream mining that uses

any form of motorized equipment within certain limited areas including the beds or banks of the

waters of the state containing essential indigenous anadromous salmonid habitat ("ESH").

Plaintiffs request declaratory relief to prevent enforcement of SB 838, which went into effect on

January 2, 2016. Intervenor defendants are groups and associations that support SB 838, and

they oppose the plaintiffs' motion. For the reasons below, plaintiffs' motion (#18) is DENIED

and defendants' motion (#52) is GRANTED.

## LEGAL STANDARD

Summary judgment shall be granted when the record shows that there is no genuine

dispute as to any material of fact and that the moving party is entitled to judgment as a matter of

law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The

moving party has the initial burden of showing that no genuine issue of material fact exists.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Devereaux v. Abbey*, 263 F.3d 1070, 1076

(9th Cir. 2001) (en banc). The court cannot weigh the evidence or determine the truth but may

only determine whether there is a genuine issue of fact. *Playboy Enters., Inc. v. Welles*, 279 F.3d

796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When a properly supported motion for summary judgment is made, the burden shifts to

the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Id.* at

250. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion

for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the

opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts

which show there is a genuine issue for trial. *Devereaux*, 263 F.3d at 1076. In assessing whether

a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995).

## INTRODUCTION

The tradition of small scale prospecting and mining has a rich heritage in this country, dating back to the early days of the American frontier. Early miners developed their own rules and customs, which evolved in the local miners' meetings, and "were used to govern mining camps before any official government existed at these remote locations." *United States v. Shumway*, 199 F.3d 1093, 1097 (9th Cir. 1999). Mining has been particularly important to the history and economic development of southwest Oregon. Even though most of the gold in the [California gold rush of 1849] and other western gold rushes was found on federal land, the federal government adopted a mining law scheme late, long after the customs of ownership by discovery and extraction had been established. *Id.* at 1098. Plaintiffs, miners and mining associations, who are passionate about both the history and the future of their industry, properly point to significant mining rights granted them by Congress in the Mining Act of 1872, which provides that "all valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, shall be free and open to exploration and purchase." 30 U.S.C. § 22.

However, the Mining Act must be viewed in the context of the extensive federal and state regulations that have been enacted since 1872 to govern mining and competing interests on federal land, such as the Multiple Use Act, 30 U.S.C. § 611-612, and the Mining and Minerals Policy Act, 30 U.S.C. § 21a. The Court understands that plaintiffs are frustrated by the complexities of the mining regulations, and it is far from clear from the record before the Court whether most of them have in fact complied with federal law.

On the other side of this dispute are the groups and individual citizens who are understandably increasingly concerned about the impact that mining activities have on the natural environment. These concerns have their place in the law as well, as reflected by the federal and state regulatory schemes that have developed to manage and protect land, surface resources, waterways, and animal habitats. *See, e.g.,* Clean Air Act, 42 U.S.C. §§ 7401 et seq.; Clean Water Act, 33 U.S.C. §§ 1251 et seq.; Nat. Environ. Policy Act, 42 U.S.C. §§ 4321 et seq.; Oregon Air Toxics Program, Oregon Admin. Rules 340-246-0010 et seq.

Both of these groups have important, but conflicting interests. Federal and state laws attempt to balance these conflicting interests, and the task is made more challenging by the interaction between different, complicated regulatory schemes. The basic question in this case, however, is simple: Can a state temporarily ban all motorized forms of instream mining in certain areas, out of concern for the environment, or is such a law preempted by the federal regulations that apply?

## SUMMARY

Plaintiffs have standing and this dispute is ripe for adjudication by this court. SB 838 is a temporary ban on instream motorized mining. It does not preclude all forms of mining. The Court finds, consistent with the extensive regulations cited above and case law including *California Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572 (1987), and *Pringle v. Oregon*, No. 2:13-CV-00309-SU, 2014 WL 795328 (D. Or. Feb. 25, 2014), it is a valid state environmental regulation that is not preempted by federal law.

## STATUTORY LANGUAGE OF SENATE BILL 838

On August 14, 2013, Oregon Governor John Kitzhaber signed into law Senate Bill 838. The legislative findings of the bill state:

1. Prospecting, small scale mining and recreational mining are
   part of the unique heritage of the State of Oregon.
2. Prospecting, small scale mining and recreational mining
   provide economic benefits to the State of Oregon and local
   communities and support tourism, small businesses and
   recreational opportunities, all of which are economic drivers in
   Oregon's rural communities.
3. Exploration of potential mine sites is necessary to discover the
   minerals that underlie the surface and inherently involves
   natural resource disturbance.
4. Mining that uses motorized equipment in the beds and banks of
   the rivers of Oregon can pose significant risks to Oregon's
   natural resources, including fish and other wildlife, riparian
   areas, water quality, the investments of this state in habitat
   enhancement and areas of cultural significance to Indian tribes.
5. Between 2007 and 2013, mining that uses motorized
   equipment in the beds and banks of the rivers of Oregon
   increased significantly, raising concerns about the cumulative
   environmental impacts.
6. The regulatory system related to mining that uses
   motorized equipment in the beds and banks of the rivers of
   Oregon should be efficient and structured to best protect
   environmental values.

Oregon Senate Bill 838 § 1(1-6) (2013).  Therefore, the first sentence of SB 838

provides:

> A moratorium is imposed until January 2, 2021, on mining that
> uses any form of motorized equipment for the purpose of
> extracting gold, silver or any precious metal from placer deposits
> of the beds or banks of waters of this state, as defined in ORS
> 196.800, or from other placer deposits, that results in the removal
> or disturbance of streamside vegetation that may impact water
> quality.

*Id.* at § 2(1).  "Waters of this state" is defined in ORS 196.800 to include essentially all water

bodies in the State.  "Beds or banks" are not defined by statute, but the rules of the Division of

State Lands provide:

> "Beds or Banks" means the physical container of the waters of this
> state, bounded on freshwater bodies by the ordinary high water line
> or bankfull stage, and in tidal bays and estuaries by the limits of
> the highest measured tide. The "bed" is typically the horizontal

section and includes non-vegetated gravel bars. The 'bank' is typically the vertical portion.

The second sentence of SB 838 provides additional parameters for the moratorium:

> The moratorium applies up to the line of ordinary high water, as defined in ORS 274.005, and 100 yards upland perpendicular to the line of ordinary high water that is located above the lowest extent of the spawning habitat in any river and tributary thereof in this state containing essential indigenous anadromous salmon habitat, as defined in ORS 196.810, or naturally reproducing populations of bull trout, except in areas that do not support populations of anadromous salmonids or naturally reproducing populations of bull trout due to a naturally occurring or lawfully placed physical barrier to fish passage.

SB 838 at § 2(1). "'Essential indigenous anadromous salmonid habitat' means the habitat that is

necessary to prevent the depletion of indigenous anadromous salmonid species during their life

history stages of spawning and rearing." ORS 196.810(1)(g)(B).

SB 838 also provides for permits to be issued for motorized mining outside of the

prohibited areas:

> In areas where the moratorium does not apply as described in subsection (1) of this section, the Department of State Lands shall limit the individual permits issued under ORS 196.810 and the general authorizations issued under ORS 196.850 to not more than 850 permits and authorizations for mining described in this section at any time during the moratorium period. The Department of State Lands shall give priority, to the greatest extent practicable, to persons who held permits or authorizations for the longest period of time before January 1, 2014.

SB 838 § 2(3).[1]

///

---

[1] Section 2(2) of SB 838 provides, "The moratorium does not apply to any mining for which the State Department of Geology and Mineral Industries issues an operating permit under ORS 517.702 to 517.989. This regulatory scheme governs surface mining, defined to include "the process of mining minerals by the removal of overburden and the extraction of natural mineral deposits thereby exposed by any method by which more than 5,000 cubic yards of minerals are extracted or by which at least one acre of land is affected within a period of 12 consecutive calendar months". ORS 517.750(15). None of the plaintiffs have mining operations of this scale, and the permitting scheme is not at issue in this litigation.

## DISCUSSION

### I.      Plaintiffs have standing, and the case is ripe for adjudication.

"The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring, inter alia, that plaintiffs have standing and that claims be 'ripe' for adjudication." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010). "Standing addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication. . . [whereas] ripeness is a means by which federal courts may dispose of matters that are premature for review because the plaintiff's purported injury is too speculative and may never occur." *Id.* at 1122.  In addition to the Article III standing and ripeness requirements, federal courts have also imposed additional prudential standing and ripeness requirements that further limit the scope of cases federal courts will entertain. *See City of Los Angeles v. County of Kern*, 581 F.3d 841, 845 (9th Cir. 2009).

Standing requires three elements: (1) injury in fact, (2) the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court, and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* at 560-561 (internal citations omitted).  The court "need only find that one petitioner has standing to allow a case to proceed." *Pub. Citizen v. Dep't of Transp.*, 316 F.3d 1002, 1014-15 (9th Cir. 2003) *rev'd on other grounds*, 541 U.S. 752 (2004); *see also Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 160 (1981) ("Because we find [one plaintiff ] has standing, we do not consider the standing of the other plaintiffs"); *Chief Probation Officers v. Shalala*, 118 F.3d 1327, 1331 (9th Cir.1997) (White, Justice, by designation) (evaluation of the standing of a second plaintiff is "unnecessary to resolution of the case").

Defendants assert that the federal environmental and mining regulations prevent the plaintiffs' mining activities unless the plaintiffs have received approval from either the Forest Service or the BLM, depending on the location of their mining claim. Defendants assert that plaintiffs have not proven that they have received this approval, therefore their alleged injuries are not fairly traceable to SB 838, nor can they be redressed by this court. The Court disagrees.

SB 838 prevents all motorized methods of mining:

> A moratorium is imposed until January 2, 2021, on mining that uses any form of motorized equipment for the purpose of extracting gold, silver or any precious metal from placer deposits of the beds or banks of waters of this state, as defined in ORS 196.800, or from other placer deposits, that results in the removal or disturbance of streamside vegetation that may impact water quality.

By contrast, the federal regulations give the Forest Service and the BLM authority to determine on a site-specific basis whether or not a person's particular motorized mining operation is allowed. *E.g.* 36 C.F.R. § 228.4(a)(1)(v). For example, under Forest Service regulations, even when a person submits a notice of intent to operate, the regulations simply require the District Ranger to notify the operator within 15 days if approval of a plan of operations is required before operations begin. 36 C.F.R. § 228.4(a)(1)(vii)(2). If the operator is not contacted, he or she is free to operate without such a plan.

Regulations with such an informal and flexible approval process are very unlikely to completely overlap with a moratorium like SB 838. While defendants would like this Court to find that federal law prevents all of the plaintiffs' mining operations, certainly a set of circumstances must exist in which an individual mining operation would be allowed under federal law and disallowed under SB 838.

In this case, Plaintiff Jason Gill has asserted facts that give him standing to bring this claim. His declaration states that he owns "the 'Governor Davis' claim, federally registered as ORMC161726, taking in approximately 2,000 feet of Josephine Creek, and the 'Luck' claim, federally registered as ORMC166648, taking in approximately 3,000 feet of Sucker Creek." Dkt. #25, 2. Gill declares that he has "an approved Plan of Operation, granted by Siskiyou National Forest, permitting me to use a motorized excavator and trammel for mining operations on the Governor Davis claim." *Id.* He claims that he has been mining a bench deposit within 50 to 100 feet of Josephine Creek and recovering significant quantities of gold. *Id.* SB 838 will make his operations within 100 feet of the high water mark of the Creek illegal. *Id.*

The Court finds the declaration of Jason Gill sufficient to show an alleged injury, fairly traceable to SB 838, which will be redressed by this Court if it finds that SB 838 is preempted by federal law, as claimed by the plaintiffs. Because the Court finds that one plaintiff has standing, it need not consider the standing of the other plaintiffs. *See Watt*, 454 U.S. 160.

This case is ripe for review because the SB 838 moratorium has gone into effect, and plaintiffs like Jason Gill claim that it is currently affecting their mining operations. Similarly, the prudential concerns weigh in favor of the Court exercising jurisdiction over this case to settle the issue of whether or not the state moratorium on motorized instream mining is preempted by federal law because the issue is likely to continue to arise as SB 838 is enforced by state officials.

## II.    Senate Bill 838 is not preempted by federal law.

There are three circumstances in which state law is preempted by federal law: (1) express preemption, where Congress explicitly defines the extent to which its enactments preempt state law; (2) field preemption, where state law attempts to regulate conduct in a field that Congress

intended the federal law exclusively to occupy; and (3) conflict preemption, where it is

impossible to comply with both state and federal requirements, or where state law stands as an

obstacle to the accomplishment and execution of the full purpose and objectives of Congress.

*Indus. Truck Ass'n v. Henry*, 125 F.3d 1305, 1309 (9th Cir.1997) (internal citations omitted).

## a. Federal law has not expressly preempted, nor has it occupied the field to preempt, nor do such laws conflict with a state's reasonable environmental regulations, even if the state law restricts mining operations on federal land.

To argue preemption, Plaintiffs rely in large part on the Mining Act of 1872.  It provides:

> [A]ll valuable mineral deposits in lands belonging to the United
> States, both surveyed and unsurveyed, shall be free and open to
> exploration and purchase, and the lands in which they are found to
> occupation and purchase, by citizens of the United States . . ..

30 U.S.C. § 22.  The Mining Act, as originally passed in 1872, "expressed no legislative intent

on the as-yet rarely contemplated subject of environmental regulation." *California Coastal*

*Comm'n v. Granite Rock Co.*, 480 U.S. 572, 582 (1987) ("*Granite Rock*").

In 1955, Congress passed the Multiple Use Act, which created a "right of the United

States to manage and dispose of the vegetative surface resources [of post-1955 mining claims] . .

. and to manage other surface resources thereof." 30 U.S.C. § 612(b).  The statute provided that

such management was "not to endanger or materially interfere with prospecting, mining, or

processing operations or uses reasonably incident thereto." *Id*.  The statute also provides that

"nothing in this subchapter. . . shall be construed as affecting or intended to affect or in any way

interfere with or modify the laws of the States. . . relating to the ownership, control,

appropriation, use, and distribution of ground or surface waters within any unpatented mining

claim." *Id*.

The United States Supreme Court has held that federal mining laws and environmental

regulations do not preempt reasonable state environmental laws that restrict mining activities on

federal land. *California Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572 (1987) ("*Granite Rock*"). In *Granite Rock*, the state law at issue was a permitting regulation that required a mining company, which had already submitted an approved 5-year plan of operations to the Forest Service, to secure a permit from the California Coastal Commission before undertaking any development, including mining. *Id.* at 577. The mining company immediately filed an action alleging that the permit requirement was preempted by federal regulations. The Court held the Mining Act of 1872 and other federal Forest Service mining regulations did not intend to preempt the imposition of reasonable state environmental regulations on mining claims. *Id.* at 583. Moreover, the Court found that the regulations "expressly contemplate coincident compliance with state law as well as with federal law." *Id.* at 584.

Support for the conclusion that states have the right to enact environmental regulations can be found in other applicable federal regulations as well. The Clean Water Act expressly recognizes and preserves state authority to regulate water pollution: "It is the policy of the Congress to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution . . .." 33 U.S.C. § 1251(b). The Clean Water Act also recognizes state authority to adopt pollution controls over and above those required by the Act:

> Except as expressly provided in this chapter, **nothing in this chapter shall (1) preclude or deny the right of any State. . .to adopt or enforce (A) any standard or limitation respecting discharges of pollutants, or (B) any requirement respecting control or abatement of pollution**; except that if an effluent limitation, or other limitation. . .is in effect under this chapter, such State. . .may not adopt or enforce any effluent limitation, or other limitation . . . which is less stringent than the effluent limitation. . . under this chapter; or (2) be construed as impairing or in any manner affecting any right or jurisdiction of the States with respect to the waters (including boundary waters) of such States.

33 U.S.C. § 1370 (emphasis added).

In this case, as discussed in the next section, SB 838 is a reasonable environmental

regulation that seeks to prevent pollution of the state's waterways. As decided by the Court in

*Granite Rock*, federal mining laws and environmental regulations do not preempt this type of

state law.

## b. Senate Bill 838 is a reasonable environmental regulation, not a land use law.

Plaintiffs contend that *Granite Rock* held that federal law would preempt a state land use

law that extended on to federal land to prohibit otherwise lawful mining activity. Indeed, the

Court, in dicta, did speculate on a hypothetical situation in which a state law would be preempted

by federal regulations:

> For purposes of this discussion and without deciding this issue, we
> may assume that the combination of the NFMA[2] and the FLPMA
> pre-empts the extension of state land use plans onto unpatented
> mining claims in national forest lands.

*Id.* at 585. However, the Court found that land use planning and environmental regulation, while

theoretically could overlap in some cases, are distinct activities, capable of differentiation. *Id.* at

588. "Land use planning in essence chooses particular uses for the land; environmental

regulation, at its core, does not mandate particular uses of the land but requires only that,

however the land is used, damage to the environment is kept within prescribed limits." *Id.*

Because the Court found that the stated purpose of the California permitting scheme was to

regulate environmental effects, not regulate land use, the Court did not reach a decision on the

merits of federal land use preemption. *Id.*

---

[2] Under the Federal Land Policy Management Act of 1976 (FLPMA), the Department of the Interior's
Bureau of Land Management is responsible for managing the mineral resources on federal forest lands, 43
U.S.C. § 1701 et seq., and under the National Forest Management Act (NFMA), the Forest Service under
the Secretary of Agriculture is responsible for the management of the surface impacts of mining on
federal forest lands, 16 U.S.C. §§ 1600 et seq.

Similarly, the stated purpose of SB 838 is to regulate the environmental impacts of the prohibited activity – in this case, motorized instream mining. Specifically, the Oregon legislature made findings that: (1) motorized methods of mining "pose significant risks to Oregon's natural resources, including fish and other wildlife, riparian areas, water quality, the investments of this state in habitat enhancement and areas of cultural significance to Indian tribes," and (2) the incidence of motorized instream mining increased significantly between 2007 and 2013, "raising concerns about the cumulative environmental impacts." Oregon Sen. Bill 838 § 1(4-5) (2013).

Like the permitting scheme in *Granite Rock*, SB 838 does not mandate particular uses of the land, nor does it prohibit all mining altogether. It limits only one form of mining, and only in specific areas. Outside of the prohibited areas, SB 838 allows for permits to be issued for motorized instream mining. *Id.* at § 2(3). Even inside the prohibited areas, motorized mining is allowed 100 yards upland of the high water mark, as long as it does not disturb vegetation to the detriment of water quality. *Id.* at § 2(1-2). Therefore the Court finds that SB 838, like the California permitting scheme, is a reasonable environmental regulation that is not preempted by federal regulations.

c. **Senate Bill 838 is not a ban on mining.**

Plaintiffs argue that, even as an environmental regulation, SB 838 is distinguishable from the permitting scheme in *Granite Rock* because there are no conditions that would allow them to continue motorized instream mining. According to plaintiffs, SB 838 is a "complete ban," and therefore, unlike *Granite Rock*, it is preempted. However, a court in this district has already addressed this issue and found that a ban on one particular method of mining was not equivalent

to a complete ban on mining. *See Pringle v. Oregon*, No. 2:13-CV-00309-SU, 2014 WL 795328 (D. Or. Feb. 25, 2014).

In *Pringle*, an Oregon law was amended to remove authority from the Department of State Lands to issue permits for suction dredge mining within a scenic waterway. *Id.* at 2. Recreational placer mining and recreational prospecting were still permitted using non-motorized methods, and motorized methods other than a suction dredge. *Id.* The miner challenging the law argued that the law "completely frustrate[d] the mining and removal of valuable minerals located in the claim sites," and he asserted that the claims had been "stripped of their entire economic value and it now costs more to maintain the claims than can be recovered by recreational mining." The miner argued that the law was distinguishable from the permitting scheme in *Granite Rock* because the effect was "to prohibit mining altogether." *Id.* at 8. The Oregon District Court found that, while the Oregon law was a ban on suction dredge mining, other methods of recreational mining were still allowed, including other types of motorized equipment, non-motorized equipment, and other methods. *Id.* at 8. Therefore, the Court held that "[b]ecause [the law] is not a de facto ban on all mining in Oregon scenic waterways, it does not conflict with the General Mining Act of 1972, and therefore is not preempted." *Id.*

Plaintiffs claim that this Court should not consider the *Pringle* decision persuasive because the cause of action was brought by a pro se litigant, who did not make the arguments necessary for the court to grant relief. The Court disagrees. In *Pringle*, the plaintiff asserted that his case was distinguishable from *Granite Rock* because, he claimed, it was more like *South Dakota Mining Ass'n v. Lawrence County*, 155 F.3d 1005 (8th Cir.1998) (*S.D Mining*). This is the very same argument the plaintiffs make in the case at bar.

In *S.D. Mining*, the defendant Lawrence County adopted an ordinance that was a per se ban on all new or amended permits for all surface metal mining within the area. *S.D. Mining Ass'n*, 155 F.3d at 1011. Because the record showed that surface metal mining was the only way for plaintiffs to mine mineral deposits on federal land in the area, the Eighth Circuit Court of Appeals found the effect of the ordinance was a de facto ban on all mining in the area. *Id.* The Lawrence County ordinance did not set out reasonable environmental regulations governing mining activities on federal lands, nor did it ban one specific method of extraction, rather it resulted in a ban on all mining. *Id.* As such, the Eighth Circuit found the ordinance preempted by the General Mining Act of 1872. *Id.* The *Pringle* court considered this analysis before deciding that an Oregon ban on suction dredge mining was not a de facto ban on all mining in all waterways.

Similarly, in this case, a ban on motorized instream mining in protected areas is not a ban on all mining in all waterways. As discussed above, SB 838 limits only one form of mining, and only in specific areas. Outside of the prohibited areas, SB 838 allows for permits to be issued for motorized instream mining. Even inside the prohibited areas, motorized mining is allowed 100 yards upland of the high water mark, as long as it does not disturb vegetation to the detriment of water quality. Thus, SB 838 is not a ban on mining.

### d. Whether or not Senate Bill 838 makes mining "commercially impracticable" does not affect the Court's preemption analysis.

Finally, plaintiffs cite to a recent California case in which a miner challenged a state law banning the use of suction dredge equipment on federal mining claims. *People v. Rinehart*, 230 Cal. App. 4th 419, (2014) *reh'g denied* (Oct. 10, 2014), *review granted and opinion superseded*, 340 P.3d 1044 (Cal. 2015). Applying language used by the *Granite Rock* Court to describe the hypothetical scenario in which state regulations might be preempted by federal land-use statutes,

the California Court of Appeal held that a California moratorium on suction-dredge permits was

potentially preempted by federal law if it rendered development of a mining claim

"commercially impracticable." *Id.* at 436.

Plaintiffs argue that the "commercially impracticable" standard should be imposed by

this Court as well. The Court disagrees. First, the Supreme Court of California has vacated the

*Rinehart* Court of Appeal opinion pending review. Second, the United States Government has

filed an amicus brief in that case that this Court finds persuasive. It argues that federal

preemption of a state environmental regulation should not turn on the cost to an individual

miner:

> Congress did not intend to preempt all state laws that might raise
> the cost of extraction. If additional expenses are imposed by a
> State's legitimate attempt to "help assure satisfaction. . . of
> environmental needs," 30 U.S.C. § 21a, in a manner that does not
> make all mining impossible, that state law does not directly
> conflict with the federal Mining Law. The State's prohibition on
> suction dredging may have made mining considerably more
> difficult for Rinehart, and may result in Rinehart determining that
> the deposit in his mining claim "no longer justifie[s] ... the further
> expenditure of his labor and means, with a reasonable prospect of
> success, in developing a valuable mine." *Chrisman v. United
> States*, 197 U.S. 313, 322 (1905). That result may have some
> bearing on whether the deposit is locatable, but it is no basis for
> finding that the State's law that it is preempted by federal law.

Brief for the United States as Amicus Curie Supporting Respondent, *People v. Rinehart*, 82 Cal.

Rptr. 3d 275 (August 2015) (No. S222620) 2015 WL 5166997 at 29. Essentially, the

Government argues that even if the state law makes it difficult or impossible for a miner to locate

the mineral deposit of a claim, such a result is not a basis to find the law preempted. *Id.*

The Court agrees that nothing in the Mining Act or subsequent federal regulations makes

the cost or practicability of mineral extraction a factor in whether or not a state environmental

law is preempted. The Mining Act guarantees that federal lands will remain free and open to

mineral discovery and development, but it does not guarantee that such discovery and development will be profitable or efficient.

## CONCLUSION

The Court agrees with the plaintiffs that the practice of mining has a long and cherished history in the State of Oregon, and a protected place in the law. However, the Court can find no indication that such protection prevents the State of Oregon from temporarily banning the use of motorized instream equipment as a legitimate way to protect water quality and fish habitat. The Mining Act and other federal regulations do not express an intent to preempt state environmental regulations affecting mining claims on federal land. Senate Bill 838 does not directly conflict with federal law, nor does it stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress because, under the law, "the 'valuable mineral deposits in lands belonging to the United States' in Oregon remain 'free and open' to mineral exploration and development by means other than the use of motorized equipment.

## ORDER

For the forgoing reasons, the plaintiffs' motion for summary judgment (#18) is DENIED. Defendants' motion for summary judgment (#52) is GRANTED.

It is so ORDERED and DATED this __25__ day of March, 2016.

MARK D. CLARKE
United States Magistrate Judge